UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
ROB EVANS & ASSOCIATES, LLC,   )
RECEIVER,                      )
      Plaintiff,               )
                               )
              v.               )  C.A. No. 12-cv-30130-MAP
                               )
THE UNITED STATES OF AMERICA,  )
      Defendant.               )
```

MEMORANDUM AND ORDER RE:
REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANT'S MOTION TO DISMISS
AND/OR FOR JUDGMENT ON THE PLEADINGS
(Dkt. Nos. 12 & 35)

March 31, 2014

PONSOR, U.S.D.J.

I. INTRODUCTION

On January 7, 2008, this court granted summary judgment for the plaintiffs in a class action brought by Andrew and Kelly Zimmerman against John and Richard Puccio and five corporate entities owned and controlled by the Puccios. <u>Zimmerman v. Cambridge Credit Counseling Corp.</u>, 529 F. Supp. 2d 254 (D. Mass. 2008), <u>aff'd</u>, 613 F.3d 60 (1st Cir. 2010). The basis for the judgment was the court's finding that the Puccios had perpetrated a scheme to defraud their customers

while purporting to offer them advice and guidance with their credit problems, in violation of the Credit Repair Organization Act ("CROA"), 15 U.S.C.§§ 1679 et seq., and the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A. Id.

After entering judgment against the corporate defendants in the amount of $259,085,983, as well as against the individual defendants in the amount of $256,527,000 plus costs and interest, the court appointed a receiver, Robb Evans & Associates, LLC (hereinafter, the "Receiver"). (C.A. No. 03-30261-MAP, Dkt. Nos. 375 & 420.) The court imposed a constructive trust over the fees paid by the defrauded class members to the Puccios and the related corporate defendants. It granted the Receiver the power to manage, control, and liquidate property held by these defendants and to bring legal actions in an effort to locate funds to pay off the judgment and compensate the plaintiff class. In connection with this, the court authorized the Receiver to open a bank account, called a Qualified Settlement Fund ("QSF"), to hold the monetary assets of the receivership as they were acquired. As of July 19, 2012,

the Receiver had collected $2,437,851.71 from the individual and corporate defendants in partial satisfaction of the court's judgment.

On April 29, 2011, the Receiver filed with the IRS income tax returns for the settlement funds, Form 1120-SF, covering a short period of 2008 and for all of 2009. The 2009 return, on behalf of the receivership estate, sought a refund of the tax payments made by the Puccios and their corporations that derived from the funds fraudulently obtained from the <u>Zimmerman</u> plaintiff class members. In an attachment to the 2009 form, the Receiver asserted that he was entitled to a "claim of right" refund[1] pursuant to 26 U.S.C. § 1341,[2] supposedly because the Puccios and the

---

[1] The "claim of right" doctrine defines a taxpayer's rights with respect to money declared as income. "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income" that must be reported on his tax return in the year it was received. <u>N. Am. Oil Consol. v. Burnet</u>, 286 U.S. 417, 424 (1932). Where a taxpayer establishes that he or she "did not have an unrestricted right to" income that was erroneously taxed in a previous year -- for example where he has paid the money back -- the taxpayer may claim a deduction. 26 U.S.C. § 1341(a)(2).

[2] Congress passed § 1341 to remedy the instances where taxpayers, who paid taxes on income in one year that in a later year they could take as a deduction, could not recover

related entities paid taxes on income that, as a result of the court's establishment of the constructive trust, they were obligated to repay. This obligation to repay, the Receiver claimed, meant that this income could no longer be attributed to the Puccios for tax purposes. On June 27, 2011, the IRS denied the requested refund.

Of course, the notion that the Puccios are obligated to give back the money they received through their fraud is somewhat hypothetical. Most of the money they and their corporations took in, and which they paid taxes on, appears to be gone. The Receiver has managed to recover only around one percent of the money awarded by the court in the <u>Zimmerman</u> judgment. The great bulk of the fraudulently obtained monies might most generously be described as a kind of phantom fund now resting, invisibly, in the Receiver's hands through the mechanism of the constructive trust, in the highly unlikely event that the Puccios will ever be able to make good on their "obligation" to pay it back.

---

the full amount of taxes previously paid because the tax rate changed. "In sum, § 1341 is designed to put the taxpayer in essentially the same position he would have been in had he never received the returned income." <u>Dominion Res., Inc. v. United States</u>, 219 F.3d 359, 363 (4th Cir. 2000).

On July 19, 2012, Plaintiff, in his role as Receiver, brought the current action against Defendant, the United States of America, seeking to recover on behalf of the plaintiff class in Zimmerman over $9 million in taxes paid by the Puccios and their corporations, based upon five years of income they received through their fraudulent schemes.

In response to the claim, Defendant United States of America filed a motion to dismiss and/or for judgment on the pleadings (Dkt. 12), which the court referred to Magistrate Judge Kenneth P. Neiman for report and recommendation ("R&R").  On November 20, 2013, Judge Neiman issued his memorandum, recommending that Defendant's motion be denied to the extent that it sought outright dismissal of the complaint, but allowed to the extent that it sought to limit drastically the amount of potential damages available to Plaintiff.  (R&R, Dkt. No. 35.)

Both parties filed timely objections to the R&R.  (Dkt. Nos. 37 & 39.)  Upon de novo review, 28 U.S.C. § 636(b), the court will adopt the Magistrate Judge's recommendation.  The scrupulous job done by Judge Neiman in his R&R obviates the need for an extended recapitulation of his reasoning.

## II.  DISCUSSION

Before turning to the substantive objections, one preliminary matter needs to be addressed.  In support of his objections to the R&R, Plaintiff has offered at least one substantive argument and a raft of additional documentary material not in the record at the time Judge Neiman was considering the parties' motions.  As Defendant's reply points out, this is not proper.  The hearing before the Magistrate Judge cannot be treated as a dress rehearsal, with difficulties in the performance to be tweaked in preparation for opening night before the district judge. See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).  The argument that the United States has "no equitable title" to taxes paid by the Puccios on their ill-gotten gains, (Pl.'s Objections 2, Dkt. 37), was not raised in recognizable form before Judge Neiman and need not be considered here.[3]

---

[3] The argument, in any event, is without merit.  It is well established that even embezzled funds are taxable. James v. United States, 361 U.S. 213, 221 (1961).  Although a court may be called upon to adjudicate the priority of competing claims to taxable income or property, the government possesses an equitable interest in taxes assessed and paid even on money obtained through fraud.

Turning first to the two arguments offered by Defendant in favor of outright dismissal of the complaint -- sovereign immunity and collateral estoppel -- this court agrees with Judge Neiman that, even acknowledging some ambiguity in the law, the stronger authority favors Plaintiff.

On the issue of sovereign immunity, Defendant argues that the provisions of the Internal Revenue Code bar Plaintiff, as a third party, from seeking a refund of taxes paid by a taxpayer, here the Puccios. Simply put, Defendant says that Plaintiff lacked standing under the Internal Revenue Code to bring the suit to recover taxes paid by someone else. Accordingly, since Congress did not waive sovereign immunity except as to claims brought by original taxpayers themselves, Plaintiff's suit must be dismissed.

Judge Neiman found otherwise, and this court agrees.[2]

---

[2] Judge Neiman also properly rejected Defendant's argument that Plaintiff lacked power to seek recovery of taxes paid by the Puccios because there was no specific statute authorizing its claim, as there is in the bankruptcy context, with successor corporations, or in the case of deceased taxpayers. This argument has some force, but it is contrary to the Supreme Court's dicta in Williams that a "taxpayer's fiduciary may litigate the taxpayer's liability, even though the fiduciary is not herself liable." U.S. v Williams, 514 U.S. 527, 539 (1995); see also 26 U.S.C. § 6903(a).

Additionally, Judge Neiman correctly rejected Defendant's

First, Congress waived sovereign immunity through 28 U.S.C. § 1346(a)(1), which provides original jurisdiction in district courts for "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . or in any manner wrongfully collected under the internal-revenue laws." Brodey v. United States, 788 F. Supp. 44, 48 (D. Mass. 1991) (Skinner, J.) (stating that there are no "convincing reasons why [the government] should not refund amounts erroneously paid to the people who paid them"). Equally importantly, as a court-appointed and

---

argument that a technical error in Plaintiff's paperwork prevented it from establishing standing. In filing the refund claim, Plaintiff did so in the name of the QSF, not in the name of the Puccios. Though Defendant raises this error now, it did not use this error as a basis to deny Plaintiff's claim. Judge Neiman found Defendant treated the claim as one made on behalf of the Puccios and not the QSF. Judge Neiman also concluded that Defendant understood the basis for Plaintiff's claim for refund. Further, because any attempt to cure the deficiency by Plaintiff would be considered untimely by Defendant, Judge Neiman found the administrative error both immaterial and waived. Angelus Milling Co. v. C.I.R., 325 U.S. 293, 297-98 (1945) (stating that if the evidence is "clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission," the Court will not allow the Commissioner of Internal Revenue to invoke a technical objection where he already considered the merits and acted on them).

congressionally authorized equity receiver, Plaintiff "has stepped into the shoes of the underlying defendants in asserting their legal claims." (R&R 11, Dkt. No. 35.) See U.S. v. Williams, 514 U.S. 527, 529 (1995) (holding that respondent, who had paid a tax under protest to remove a lien on her property, had standing under 28 U.S.C. § 1346(a)(1) to sue for a refund). Recognizing, as the court has noted, that the law is not perfectly clear on this point, the stronger authority suggests that Plaintiff, in its role as fiduciary, is not absolutely barred by the doctrine of sovereign immunity from prosecuting this lawsuit on behalf of the Zimmerman class.

In its argument based on collateral estoppel, Defendant contends that Plaintiff is prohibited from claiming relief under § 1341 because the statute does not permit refunds where the income is obtained by fraud. As Plaintiff has "stepped into the shoes" of the Puccios, the argument runs, it could only claim those rights that the Puccios themselves possessed. Since the Puccios were found by this court to have committed fraud, Plaintiff, which shares it legal identity with the defrauding Puccios, is precluded from

recovering a refund.

Like Judge Neiman, this court is persuaded by the logic of Cooper v. United States, 362 F. Supp. 2d 649 (W.D.N.C. 2005), that the fraudulent conduct of the Puccios should not be imputed to Plaintiff, who is tasked with recovering funds for the victims of the Puccio's fraud.[3] In Cooper, the court refused to impute to the bankruptcy trustee the fraudulent acts committed by the debtor. Id. at 656. To do so, the court held, would be "to deprive the very victims of the fraud from recovering what is essentially and rightfully theirs" and would not further the purpose of the fraud exception to recovery under § 1341. Id. Courts have exhibited a similar disinclination to impute fraud to a

---

[3] Plaintiff made three other arguments in opposition to Defendant's assertion of collateral estoppel, all of which lack merit. First, Plaintiff argued that the Puccios did not believe at the time they reported the income that they had received it through fraud. However, the record of the Zimmerman litigation clearly showed otherwise, and this court specifically found to the contrary. Second, Plaintiff argued that the elements of collateral estoppel were not satisfied, since the issues were not identical. With regard to the issue of the Puccio's fraudulent conduct, however, the issues here and in the Zimmerman case are identical. Third, Plaintiff argued that the equitable defense of collateral estoppel simply could not be asserted against an equity receiver. No authority was cited in support of this assertion, and the court has found none.

receiver in the corporate context.  See Jones v. Wells Fargo Bank, N.A., 666 F.3d 955, 966 (5th Cir. 2012) ("Although a receiver generally "has no greater powers than the corporation had as of the date of the receivership," it is well established that "when the receiver acts to protect innocent creditors . . . he can maintain and defend actions done in fraud of creditors even though the corporation would not be permitted to do so").

Although cases in the bankruptcy and corporate context do not provide a perfect fit with the case at hand, their logic is compelling.  Where a receiver is attempting to recover funds for the victims of fraud, he should not be hamstrung with the imputation that he is himself, in effect, guilty of the fraud and thus barred from advancing the interests of the victims.  For this reason, the doctrine of collateral estoppel does not appear to justify threshold dismissal of this lawsuit.

It must be conceded that Defendant's protests about the unfairness and illogic of the court's position have some traction.  Plaintiff is being permitted to step into the Puccios' shoes for the purpose of asserting a claim for a

tax refund, but then step out of the shoes to avoid losing its claim based on the Puccio's fraud. The response to this criticism is that the nature of Plaintiff's role as a receiver makes this paradox sensible. It can step into the malefactor's boots, but it can also, as it were, knock the mud off them before putting them on. Absent this, Plaintiff would have no power to do its job and protect the victims' rights.

Although the stronger authority persuades the court that Plaintiff is entitled to prevail in the battle over whether this lawsuit should be dismissed outright, Defendant's third argument strips Plaintiff of the lion's share of the spoils of its victory. To the extent that Plaintiff is entitled to anything, the refund must be based upon the amount of money actually transferred into the QSF in 2009, and not the full amount of the taxes paid by the Puccios and their related corporations between 2001 and 2005. In an effort to prevent its victory from turning Pyrrhic, Plaintiff offers two arguments. Neither is persuasive.

First, Plaintiff's argument to the contrary

notwithstanding, the issue of the scope of potential damages is properly before the court at this time.  This is manifestly a discrete <u>legal</u> question that is ripe for resolution.  <u>See</u> <u>Barr Inc. v. Town of Falmouth</u>, 488 F. Supp. 2d 5, 8-9 (D. Mass. 2007) (determining at the motion to dismiss stage that, under clear state law, the plaintiff's damages were limited).

Moreover, Judge Neiman's conclusion on this point was entirely correct.  Plaintiff may only recover a refund of taxes based on the funds actually "given back" -- <u>i.e.</u> those actually restored to the QSF -- and not the full amount paid in income taxes based on the total quantum of funds obtained by fraud by Puccios and their corporations, the bulk of which has never been recovered.  The fact that the Puccios and their corporations are now "obligated" to return the funds does not help Plaintiff.

The conclusion is supported by the plain language of § 1341.  The very title of the statute describes a "Computation of tax where taxpayer <u>restores</u> substantial amount held under claim of right."  26 U.S.C. § 1341 (emphasis added).  The statute's text makes clear that the

deduction sought must be "allowable." Id. Other provisions of the Internal Revenue Code make clear the conditions under which a refund sought by Plaintiff would be allowable.

Under § 461, a deduction in a particular tax year may be claimed only where "economic performance" has occurred. 26 U.S.C. § 461(h). The only analogy to "economic performance" available to Plaintiff here is the repayment of recovered funds into the QSF. As the R&R points out, numerous courts have held that the obligation to repay is not enough; there must be repayment. See Chernin v. United States, 149 F.3d 805, 816 (8th Cir. 1998); (R&R 27-28 (citing other cases), Dkt. No. 35). In this context, Plaintiff is limited to claiming a deduction only for those amounts paid into the QSF for the particular year it is claiming the refund. No authority suggests that the ghostly movement of hypothetical funds -- funds never actually recovered -- into the constructive trust would constitute the sort of "performance" that would justify a refund of taxes calculated upon income received and apparently spent by the Puccios years ago.

Indeed, the collection of a refund based upon funds

paid into the QSF is a <u>best</u> case scenario; this conclusion assumes that the Puccios and their corporations were accrual-basis taxpayers.  If they were cash-basis taxpayers, then arguably Plaintiff would not be permitted to claim a deduction unless and until the QSF actually paid out funds to the victims.  The record at this stage is unclear as to exactly how the Puccios and their corporations handled their tax obligations.  It is therefore fairest to view the facts in the light most favorable to Plaintiff and, thus, set the limitation on damages at the amount paid into the QSF.

Finally, in the event that this court adopts the R&R in its entirety, as it will, Plaintiff requests that the court certify the question of the scope of potential damages for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Certification would not be proper for two reasons.  First, the issue of the scope of potential damages is not, in the court's view, a controlling question of law upon which there is "a substantial ground for difference of opinion."  Second, as currently configured, this case is now quickly approaching a stage where it will be ripe for a prompt disposition that will permit both parties to take an

appeal of all the issues raised by this complex case to the Court of Appeals, if they wish to do so.

### III. CONCLUSION

Much of Plaintiff's argument understandably rests on its view of the equities of this controversy and the sympathetic position of the victims of the Puccios' unscrupulous fraud. But Plaintiff is not the only one wearing the white hat. The taxpayers of the United States are being asked to disgorge millions of dollars in taxes properly assessed (at least at the time) upon income that the Puccios received, enjoyed, and are very unlikely ever to pay back. Little risk of any windfall to the government exists here. As so often happens, the equities are simply not all on one side.

As the court noted at the outset, it is not necessary in this somewhat truncated memorandum to reprise all the arguments and authorities contained in Judge Neiman's meticulous R&R. Its contents are incorporated into this memorandum and into the court's ruling. For the reasons summarized above, the Report and Recommendation of the Magistrate Judge (Dkt. No. 35), upon de novo review, is

hereby ADOPTED in its entirety. Defendant's motion to dismiss (Dkt. No. 12) is hereby ALLOWED in part, as to the question of the scope of potential damages, and is otherwise DENIED. The case is referred to Magistrate Judge Neiman for a pretrial scheduling conference.

It is so ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge